**TEXAS & N. O. R. CO. v. WRENN et al.**

**No. 1464.**

Court of Civil Appeals of Texas. Waco.
Feb. 15, 1934.

Rehearing Denied March 15, 1934.

Tom B. Bartlett, of Marlin, and Sewell, Taylor, Morris & Garwood, of Houston, for appellant.

C. R. Glass, of Marlin, and Robert Lee Guthrie, of Dallas, for appellees.

GALLAGHER, Chief Justice.

This suit was instituted by H. E. Wrenn and Marlin Citizens' National Bank, hereinafter called appellees, against Texas & New Orleans Railroad Company, hereinafter called appellant, to recover the sum of $2,208.40, the alleged value of sixty-seven bales of cotton. Said bank was joined as a party plaintiff because it had advanced money to said Wrenn on the bills of lading under which said cotton was transported to Marlin. So far as it participated in the transactions involved herein, it was represented by said Wrenn. Appellees alleged that said cotton was transported by appellant as a common carrier under a bill of lading held by them from Reagan to Marlin and was destroyed by fire while in its possession at the latter place. They sought recovery against appellant on its common-law liability as such carrier. Appellant denied that said cotton was in its possession when destroyed, and alleged affirmatively that prior to such destruction the same had been at appellee's request delivered to the Exporters' & Traders' Warehouse & Compress Company; that said compress company was the agent of appellees, and received and accepted delivery of said cotton as such. Appellant further alleged in the alternative that, if it had not, prior to the destruction of such cotton, made a full and effective delivery thereof to appellees' said agent, under the specific provisions of the bill of lading under which it transported said cotton to Marlin its liability as a common carrier had terminated; that, if liable at all, it was liable only as a warehouseman; that the destruction of the cotton was not caused by any negligence on its part; and that therefore it was not liable in such capacity. Appellant sought by cross-action to recover the sum of $120.06 as compensation for transporting said cotton to Marlin.

The trial was begun before a jury, but at the conclusion of the testimony all the parties agreed that the issues of fact should be withdrawn from the jury and determined by the court. The court thereupon discharged the jury and rendered judgment in favor of appellees against appellant for said sum of $2,208.40, and in favor of appellant on its cross-action for $120.06, and ordered that such recovery operate as a credit on the recovery in favor of appellees.

### Opinion.

Appellant's first contention is that the testimony shows conclusively that, prior to the destruction of said cotton by fire, the same had been completely delivered by it to said compress company as appellees' agent, and that its liability as a common carrier had therefore terminated. C. C. Kelly, on April 5, 1932, shipped said cotton from Reagan to Marlin, Tex., on a "shipper's order" bill of lading, which he, for a valuable consideration, indorsed and delivered to appellee Wrenn, to whom, by the terms thereof, notice of the arrival of said cotton at Marlin was to be given. Appellant did not have

a warehouse at Marlin for the handling of cotton, but used the warehouse of the compress company for such purpose. On this account it was appellant's custom, and had been for several years preceding, at the beginning of each cotton season to obtain from the respective cotton dealers at that station instructions to deliver cotton consigned to them, respectively, to such compress company. Appellee Wrenn, at the instance of appellant and in accordance with such custom, signed and delivered to it a written request to so deliver all cotton consigned to him. Said cotton arrived in Marlin and was placed by appellant at the platform of the compress company some time between 9 and 10 o'clock in the morning on April 6, 1932. Appellant, in accordance with its custom in such cases, issued its manifest to the compress company authorizing it to unload said cotton. The compress company unloaded the same during the afternoon of April 6th, and placed it on its platform for the purpose of being conditioned and weighed. This work was begun on the morning of April 7th, and had not been completed at about 4:35 p. m. on April 8th, at which time the entire consignment was destroyed by fire. The invariable custom of the compress company was at that time, and had been for a period of some nine years prior thereto, to unload cotton delivered to it by the railroad company, condition and weigh it, and to thereafter issue warehouse tickets showing the weight and condition of the cotton in each bale. These tickets were always delivered to appellant. After such tickets were delivered to appellant, the consignee would go to appellant, present his bill of lading, pay the freight, and obtain the same. The compress company would not deliver cotton to any person notwithstanding he might have the bill of lading, unless he had also such warehouse tickets therefor. Appellee H. E. Wrenn, assignee of said bill of lading, demanded possession of said cotton of appellant about three and a half hours before the fire occurred which destroyed the same. Appellant declined to deliver the cotton to him because the compress company had not issued and delivered to it warehouse tickets therefor. Other incidents of this particular transaction not here recited are without effect to change the relation shown by the foregoing facts to have existed between appellant and the compress company in reference to such cotton. Such facts are ample to sustain an implied finding in support of the judgment that the compress company was the agent of appellant for the purpose of unloading said cotton and issuing and delivering warehouse tickets therefor, by means of which appellant could make symbolic delivery of such cotton to appellees. Since the service to be so rendered by it had not been completed, and since appellant refused on that ground to provide for surrendering possession of such cotton to appellees on proper demand, we do not think it can be reasonably said that there had been an effective delivery so as to terminate the liability of appellant as a common carrier. Houston & T. C. Ry. Co. v. J. W. Geer & Sons (Tex. Civ. App.) 236 S. W. 199, 201, par. 1; Wichita Valley Ry. Co. v. Golden (Tex. Civ. App.) 211 S. W. 465, 466, par. 1; Wichita Falls & N. W. Ry. Co. v. J. J. Brown Co., 76 Okl. 84, 183 P. 889 et seq.; Texas & N. O. R. Co. v. Newman (Tex. Civ. App.) 273 S. W. 335, 338, par. 4; Southern Grocery Co. v. Bush, 131 Ark. 153, 198 S. W. 136, 139, par 3.

Appellant contends that the testimony shows conclusively that, under and by virtue of a certain stipulation contained in the bill of lading, its liability for said cotton as a common carrier at the time the same was destroyed had terminated, and had been succeeded by the liability of a warehouseman. Appellees do not contend that the facts in this case charge appellant with liability as a warehouseman for the destruction of said cotton. The stipulation so relied upon is as follows: "The carrier's liability shall be that of a warehouseman only for loss, damage or delay caused by fire occurring after the expiration of the free time allowed by tariffs lawfully on file (such free time to be computed as therein provided) after notice of the arrival of the property at destination * * * has been duly sent or given, and after placement of the property for delivery at destination or tender of delivery of the property to the party entitled to receive it has been made."

Notice of the arrival of said cotton was given, and the cars on which it was loaded were placed for delivery during the morning of April 6th, and the work of unloading was completed during the afternoon. By the terms of said stipulation, these facts alone did not transmute appellant's liability as therein specified, but the "free time" allowed by its tariffs must also have expired to effect such change. Said stipulation expressly provides that such "free time" shall be computed as provided in appellant's tariffs. Appellant introduced in evidence an excerpt therefrom, which provided that "forty-eight hours (two days) free time will be allowed

for loading or unloading all commodities." A reference to another rule included therein was appended to the above excerpt, but appellant did not offer the rule so referred to in evidence. Appellant's local agent at Marlin testified in this connection without objection and without contradiction that "free time" on this particular shipment began to run at 7 o'clock on the morning of April 7th. So computed, such free time, the expiration of which was made a condition precedent to transmutation of appellant's liability, had not expired at the time the cotton was destroyed by fire, and appellant's contention under consideration is without merit.

The judgment of the trial court is affirmed.